## ADAMS v. GRANT.

Vendor and Purchaser—Fraud—Rescission—Waiver.

Plaintiffs' right to rescind a contract exchanging their property for an apartment house, which they were induced to enter into by false representations as to the rental value, was not waived by their delay in rescinding and by making payments after discovering that the rental value was much less than represented, where they were without previous business experience, the delay was due to further representations that the condition was temporary and would be better, and suit for rescission was commenced about two months after they discovered that defendant had paid much less for the apartment house than had been represented to them.

Appeal from Wayne; Webster (Arthur), J. Submitted April 12, 1929. (Docket No. 90, Calendar No. 34,170.) Decided June 3, 1929.

Bill by Claire C. Adams and others against William Grant, Jr., for rescission of land contract. From decree for defendant, plaintiffs appeal. Reversed.

*Axford & Hulett* (*George P. Coash,* of counsel), for plaintiffs.

*Raymond J. Kelly,* for defendant.

Sharpe, J. On or about July 17, 1926, a real estate deal was consummated between the parties hereto whereby plaintiffs deeded to defendant a residence property occupied by them and valued at $14,500 and three vacant lots valued at $3,300, and defendant executed a land contract in which he

agreed to sell to plaintiffs an apartment house prop-
erty, having a frontage on Willis avenue of 65 feet,
for the sum of $60,000. Plaintiffs' property was
taken at the valuations stated, and the balance of
$42,200 was to be paid in monthly instalments of
$422, including interest at 6 per cent. On Janu-
ary 7, 1927, plaintiffs filed the bill of complaint
herein, praying for rescission and cancellation, and
that their property be restored to them. They had
theretofore tendered an assignment of the contract
and made written demand therefor. The defendant
by cross-bill seeks foreclosure of his land contract,
there having been default in payment. From a de-
cree for defendant, plaintiffs appeal.

On May 17, 1926, defendant entered into a con-
tract to purchase the apartment house property
from Mrs. Nyle Tibbetts for the sum of $42,500, of
which $18,500 was to be paid in cash and the pay-
ments due on a land contract for the balance as-
sumed by him. Mrs. Tibbetts had theretofore listed
it for sale with Miss Addie P. McMahon, an em-
ployee of Gilmore & Chavenelle, real estate agents,
at $50,000. Defendant purchased it as an invest-
ment, and at once authorized Miss McMahon to sell
it for him at the price of $60,000. She made some
effort to do so, and, before leaving on a trip outside
the State, arranged with Horace G. Murphy, a real
estate dealer, to act for her in making such a sale.
Murphy learned that plaintiffs were desirous of dis-
posing of their property, and went to see them
about it. He sought to interest them in the apart-
ment house property. On June 5th, they listed their
property with him, giving him exclusive selling
rights for 60 days, at a price to be satisfactory to
them and agreeing to pay him a commission of 3 per
cent. if sale was made. The plaintiff M. Grace

Adams, the daughter of Mrs. Wight, and the wife of Claire C. Adams, was most active in the negotiations which led up to the deal. She visited the apartment house on several occasions, at times accompanied by one or both of the other plaintiffs. On June 12th, Murphy secured from plaintiffs an agreement to purchase the apartment house property at the price of $60,000, and to deed their property at $17,800 to apply thereon, the balance to be paid in monthly instalments, including interest, of $350. The defendant did not sign this agreement. He had been out of the city. On his return about June 23d, Murphy presented it to him, but he insisted that the monthly payment must be one per cent. of the balance due under the contract. It was changed in this respect, and executed by all parties on July 6th. It contained an agreement on the part of the plaintiffs to pay Murphy a commission of $600, and on the part of the defendant to pay him $1,400. These commissions were afterwards paid. On its execution Mrs. Adams took possession of the apartment building. The other plaintiffs moved in on the 17th. The land contract was executed by defendant and delivered a few days later. Murphy, however, had secured deeds from plaintiffs to defendant, and recorded them on July 10th. Plaintiffs made payments on the contract as follows: on August 8th, $400; on September 8th, $250; on October 8th, $260, and on November 9th, $260.

Among the representations claimed by plaintiffs to have been made by Murphy were the following:

1. That the apartment property was of the value of $65,000 ($1,000 per foot of frontage), and would readily sell for that price.

2. That the defendant had paid $50,000 in cash for it.

3. That the gross income the previous year amounted to $10,800, and the expenses of operation to $1,506.25.

4. That the heating bill during that year was but $420.

While the trial court made no finding as to these representations, he said in the opinion filed:

"From all the testimony it appears to me quite evident that plaintiffs, all of them, are without any business experience and easily led, and in the deal were overpersuaded by the agent, Murphy. * * * Murphy undoubtedly painted a glowing picture of the possibilities in the rooming house."

We are satisfied from a reading of the record that these representations were made; that they were made as an inducement to plaintiffs to dispose of their property; that they were untrue; and that they were relied on by plaintiffs. All three of the plaintiffs testified that Murphy so stated, not once but several times during the negotiations. The property conveyed by the plaintiffs was all that they had. Mr. Adams had employment, the proceeds of which were barely sufficient to meet their household expenses. They had no experience in such dealings. They had the right to assume that Murphy was acting, and would act, in their interest when they gave him the listing contract. That these representations were untrue can hardly be questioned. People unfamiliar with real estate dealings seldom, if ever, speak of the value of land per foot of frontage. Defendant paid but $42,500 for the property. Murphy exhibited to them a statement in his own handwriting which he said showed the receipts and expenses for the preceding year. In it the income was said to be $10,800, whereas in fact it was much less, and the expense of operation $1,506.25, whereas

in fact it had been much more. The expense of heating was stated to be $420, whereas in fact it was $849.48, and the taxes were $963.44 instead of $700, as stated thereon. That plaintiffs relied on these representations cannot be doubted.

The decree in favor of the defendant was based on the finding of the trial court that the plaintiffs, by their occupation of the premises and by the payments made by them after they must have known that the representations made by Murphy were untrue, waived their right to rescind. This question has given us more trouble than that already discussed. It is true that both Mr. and Mrs. Adams must have become satisfied before the deal was finally closed by the delivery of defendant's contract on or about July 17th that the rental value of the apartments was not what it had been represented to be. Mrs. Adams had made complaint to Murphy about it on several occasions, and he had assured her that the change was but temporary. Mr. Adams testified that, when the land contract was presented to him for signature by Murphy, he said to him, "It looks to me, Mr. Murphy, as though we would lose every dollar we have in the world if we signed that," and that Murphy answered, "You will have to sign it because you have turned over your deed; you will have to sign it." As before stated, Murphy had secured deeds from the plaintiffs of their property on July 8th and recorded them on July 10th. His action in recording these deeds before the execution and delivery of defendant's land contract to them on or about July 17th is unexplained. Mrs. Adams testified that she made complaint to defendant when making her payments, and he said, "Well, a little later that the place would fill up," and that both he and Murphy kept putting her off, saying

"it would be better," and that defendant would not bother her about the payments. Her first knowledge as to the value of the property and the price at which defendant had purchased it was acquired in November.

This court has often said "that if one has been defrauded he must complain of it promptly after discovering the fraud" (*Draft* v. *Hesselsweet,* 194 Mich. 604, 607, and cases cited), and that "where plaintiff made payments upon a purchase after he knew he had been defrauded, he waived his right to rescind on the ground of fraud" (*Roszczewski* v. *Jozwiak,* 225 Mich. 670, 673, and cases cited). What was said in those cases was applicable to the facts presented, and we have no desire to overrule them. The facts in this case, however, bring it within the rule stated in *Sweet* v. *Martin,* 233 Mich. 655, the syllabus of which reads as follows:

"Where, in a suit by the vendees for the rescission of a contract for the purchase of land on the ground of fraudulent representations, it appears that any delay in bringing suit after the fraud was discovered was induced by the vendors' persuasion and insistence that further trial would demonstrate the truth of their representations, they are in no position to complain of the delay and claim that plaintiffs have waived their right to complain of the fraud."

It cannot be said that plaintiffs by part performance, or by their delay in bringing suit, have waived their right to seek rescission. They are entitled to a decree rescinding the contract of sale made by them, as prayed for in their bill of complaint.

Defendant has disposed of the property conveyed to him by the plaintiffs. The trial court made no finding as to its value. That placed upon it by

plaintiffs in the exchange of properties may not alone be considered. From the testimony, including that of the experts who were called by both parties, we are of the opinion that $14,000 in cash would have been a fair price for it at the time it was conveyed. An accounting must be had, in which plaintiffs will be charged with the fair rental income of the apartment property since it has been in their possession, and credited with the payments made by them on the land contract and the fair rental value of the property conveyed by them. Should counsel be unable to agree upon these amounts, the case must be remanded for their determination.

The decree entered is reversed and set aside. Plaintiffs may here have a personal decree against the defendant for the amount above stated, with such addition thereto, or deduction therefrom, as may be disclosed by the accounting, with costs of both courts. Payment thereof may be declared a lien upon the interest of defendant in the apartment house property, with the usual provisions for a sale thereof.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.