CHANLER *v.* VENETIAN PROPERTIES CORP.

1. EQUITY—CLEAN HANDS—RESCISSION.
    Purchaser of apartment building guilty of fraudulently misrepresenting to vendor his financial standing does not come into court with clean hands, and therefore is not entitled to equitable relief of rescission on ground of vendor's fraud.

2. BROKERS—PRINCIPAL AND AGENT.
    Broker making alleged fraudulent misrepresentations to vendee as to property sold, *held*, under evidence, to have been acting as vendor's agent.

3. SAME—ACCEPTANCE OF SERVICES.
    Vendor accepting and paying for services of broker in sale of property is bound by representations made by him in negotiating and consummating sale.

4. VENDOR AND PURCHASER—FRAUD—MATERIAL MISREPRESENTATIONS.
    Misrepresentations by vendor's agent, in sale of apartment house, as to annual cost of insurance, fuel, and taxes were material.

5. SAME—RESCISSION—FRAUD—LACHES.
    Purchasers of apartment house who brought suit for rescission on ground of fraud in about seven months after they took possession were not guilty of laches, where knowledge of fraud came to them only by degrees, and suit was instituted as culmination of numerous misrepresentations.

6. CONTRACTS—FRAUD—RESCISSION—LACHES.
    If defrauded person rescinds with reasonable promptness after discovering fraud, he is not guilty of laches.

7. VENDOR AND PURCHASER—EQUITY—CLEAN HANDS—PARTIES NOT ENTITLED TO EQUITABLE RELIEF AFFORDED RIGHTS AS IN LAW ACTION.
    In vendee's suit for rescission on ground of fraud, and vendor's cross-bill for foreclosure, where neither party comes into court with clean hands, but unusual conditions are presented, final adjudication is made which affords parties substantially same rights they would have had incident to termination of contract in action at law.

Appeal from Wayne; McPeek (Russell R.), J., presiding. Submitted April 23, 1931. (Docket No. 102, Calendar No. 35,608.) Decided June 1, 1931.

Bill by Harold G. Chanler and another against Venetian Properties Corporation and another to rescind a land contract on the ground of fraud. Cross-bill by defendant corporation for foreclosure. Decree for plaintiffs. Defendant corporation appeals. Reversed and remanded.

*Manchester, Zirkalose & Smith* (*C. F. Gates, C. D. Wernette,* and *Harrison T. Watson,* of counsel), for plaintiffs.

*Bulkley, Ledyard, Dickinson & Wright* (*Harold R. Smith* and *R. William Rogers,* of counsel), for defendant corporation.

NORTH, J. By their bill of complaint plaintiffs seek rescission of a land contract by which they purchased from the defendant a 67-apartment building known as the Venetian Garden Apartments in Detroit. The total consideration was $400,000. Plaintiffs received an initial credit of $80,000 in consideration of a transfer of their vendees' interest in a land contract for the purchase of real estate located in Kent county. This interest, however, was transferred direct from plaintiffs to a real estate agency in payment of its commission for consummating this sale of the Venetian Garden Apartments. The remaining $320,000 was payable in monthly installments of $1,800 during the first year of the contract and somewhat larger monthly payments thereafter. Plaintiffs base their right to relief on alleged fraudulent misrepresentations. We quote from their brief:

"The outstanding representations are the number of apartments, the condition of the apartments, the size of the apartments, the monthly and annual income, the cost of insurance, the cost of coal, the cost of light and power and the amount of taxes."

The defendant answered, and in a cross-bill alleged that plaintiffs were in default in the payments due under the contract, and prayed for foreclosure and the appointment of a receiver.

In reporting his findings of fact and conclusions of law, the circuit court commissioner, to whom the case was referred, held that plaintiffs were not in court with clean hands, found against plaintiffs' contention of fraud, and recommended dismissal of plaintiffs' bill of complaint. He also found defendant was entitled to foreclosure as prayed in its cross-bill.

Plaintiffs excepted to the commissioner's findings of fact and conclusions of law and after hearing before the circuit judge decree was entered sustaining plaintiffs' contention, granting cancellation, and giving plaintiffs a lien upon the property for $76,406.05 which he found due from defendant to plaintiffs. Defendant has appealed.

At the threshold of plaintiffs' case we are confronted with defendant's contention that plaintiffs are not in court with clean hands and therefore are not entitled to equitable relief. This is based upon defendant's claim that incident to the negotiations leading to the purchase of this property by plaintiffs and as bearing upon their acceptability as contract purchasers of this valuable income-producing apartment, Mr. Chanler submitted to defendant or its agent a financial statement. From this statement Chanler appeared to be worth upwards of $100,000 exclusive of the property transferred as an initial

payment in this transaction. At first Chanler admitted he signed this financial statement, and he made a pitiful attempt by his own testimony to establish the truth of certain of the items contained therein. As to other substantial items he frankly admitted the statement to be wholly false; $75,100 of this financial showing consisted of equities in two pieces of real estate in which Chanler had no interest whatever. Later he testified that the signature attached to this statement was not his. Without reviewing in detail the testimony pertinent to this phase of the case, suffice it to say we have no doubt as to the genuineness of Chanler's signature on this financial statement, or that it was submitted to and considered by the defendant's officers in connection with the consummation of the contract with plaintiffs. The falsity of the financial statement is clearly established by the record. Defendant's officers considered it and relied upon it. It had a very material bearing upon the transaction in that a contract purchaser of income-producing property who has substantial independent means is obviously much more acceptable than one who is financially irresponsible. This not only bears upon the prospective ability of the purchaser to perform; but in the event of nonperformance and foreclosure of the contract a decree for deficiency could not be enforced against a financially irresponsible vendee. We are constrained to hold that because of their failure to come into court with clean hands plaintiffs are not entitled to equitable relief; and it follows that the bill of complaint must be dismissed.

Because of alleged fraudulent misrepresentations made by the agent through whom this sale was consummated, it becomes necessary to determine the controverted question as to which of these parties

the agent represented.  Review of the record estab-
lishes the fact that the real estate agency was acting
in behalf of defendant.  It must be so held because
defendant accepted the services rendered by the
agency and paid for it by turning over to the agency
the initial contract payment, which was made by
the transfer of a vendee's interest fixed at $80,000
in resort property located in Kent county, Michigan,
and known as the Maston Lake property.  Further,
in a written agreement executed by it at the time,
defendant definitely recited it was "indebted to"
the agency "for its commission in effecting a sale of
Venetian Garden Apartments."  It follows that the
defendant is bound by the representations made by
the employees or representatives of this real estate
agency in negotiating and consummating this sale to
plaintiffs.

In this connection, the agent furnished plaintiffs
with a "set-up" containing the following pertinent
information relative to the Venetian Garden Apart-
ments:

67  Apartments—lot  120 x 150—built-in  tub  and
shower  baths—pedestal  washstands—16,  5  rooms
and bath—51, 4 rooms and bath—total rooms 67.

Income—present income $3,335 monthly, annually
$40,020.

Expenses—salaries $2,280—insurance $320—wa-
ter $339.44—coal (200 tons at $7) $1,400—light and
power $900—city, State and county taxes $5,785—
total expenses $11,024.44.

Net Income—$28,995.56.

While we are not at all impressed with plaintiffs'
claim as to some of the alleged misrepresentations
made by defendant's agent, as to the other items we
think it clearly appears that the agent made mate-
rial false representations to plaintiffs by which they

were deceived.  We will not review all of the claims of fraud, but note briefly only the following:

Insurance:  $320 was the represented cost, obviously per year.  The undisputed proof shows that between January and August, 1929, this item amounted to $1,368.06.

Fuel:  Represented cost was $1,400 per year.  The record discloses that defendant's agent expended from July to December, 1928, inclusive, for "fuel burned" $1,347.52.  From January 15, 1929, during the balance of the heating season plaintiffs' fuel expense was in excess of $1,500.

Taxes:  The "set-up" delivered to plaintiffs fixed this item at $5,785.  In fact the 1928 taxes amounted to $6,559.51; and taxes for 1929 to $6,476.19.

These discrepancies were very material; and the false representation of defendant's agent relative thereto cannot be palliated.  Defendant urges that the delay of plaintiffs after discovering these misrepresentations before moving for rescission constituted laches barring equitable relief.  We cannot so hold.  Plaintiffs went into possession of this property January 15, 1929.  Their bill of complaint was filed August 29, 1929.  Full knowledge of the above misrepresentations and of others which we do not detail came to plaintiffs only by degrees.  It is fair to infer from this record that it was the culmination of the numerous misrepresentations which finally caused plaintiffs to seek rescission.

"The law does not require action to rescind before the defrauded person is reasonably certain that he has been defrauded.  If he acts with reasonable promptness thereafter, it is sufficient.  The law of laches should be used as a shield and not as a sword."  *Barron* v. *Myers,* 146 Mich. 510.

See, also, *Adams* v. *Grant,* 247 Mich. 60; *Lurie* v. *Schoenberg,* 252 Mich. 90.

We think the record sustains the finding of the circuit judge that plaintiffs relied upon the above-noted misrepresentations and they were deceived thereby and defrauded in consequence thereof. It follows that the defendant must be charged with the fraud which its agent perpetrated. Thus we have in this case the rather anomalous situation of two opposing litigants in equity neither of whom in a technical sense is entitled to relief, because neither is in court with clean hands. Were it not for unusual conditions here presented, each would be summarily dismissed from court. But by reason of their having instituted this suit, plaintiffs are responsible for this proceeding being in the court of equity. At the time the suit was commenced the defendant unquestionably had a legal right to proceed at law to terminate this contract on which plaintiffs were then in default. While this suit was pending defendant could not proceed at law because it was restrained by order of the court. Plaintiffs continued to collect rentals for these apartments until September 28, 1929, when a receiver was appointed. The trial judge found, and we think correctly so, that plaintiffs have collected rentals from this property to the amount of $6,642.84 in excess of their disbursements. Further, plaintiffs continued to occupy one of the apartments rent free until they were ordered to vacate by the circuit court, August 15, 1930. Not only is this property under receivership, but it is subject to an underlying mortgage of $160,000. And in the event of default and foreclosure of this mortgage, which would be the natural result of delay in final decision of the controversy now before the court, the interest of all the parties concerned would be cut off. Hence we think a final adjudication should be here made which will afford each of these

parties substantially the same rights as they would have had incident to the termination of this contract by proceedings at law. To accomplish this purpose, a decree of foreclosure may be taken by defendant for the unpaid portion of the contract price with interest, unpaid items of insurance or taxes, if any, which plaintiffs should have paid under the terms of their contract; but plaintiffs will have 30 days from and after the date of the decree within which to pay defendant the amount so found due with accrued interest thereon as a condition of reinstatement of the contract. To obtain a result substantially in conformity with termination of the contract by proceedings at law, defendant will not be permitted to take a deficiency decree upon foreclosure. Subject to the above determination by this court, the case must be remanded to the circuit court for the purpose of supervising and making final disposition of the receivership pending herein. Costs to appellant.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.