LAPICKI *v.* JONES.

1. VENDOR AND PURCHASER—FRAUD—RESCISSION—BURDEN OF PROOF.
    In suit for rescission of contract for purchase of farm, on
    ground of fraudulent representations, burden of proof is on
    plaintiffs to establish that such representations were made,
    that plaintiffs relied on them, and that they were untrue.

2. SAME—EVIDENCE INSUFFICIENT TO SUSTAIN BURDEN OF PROOF.
    Evidence as to falsity of representations of value of farm sold
    to plaintiffs on contract, *held*, not sufficient to sustain burden
    of proof resting on them, warranting rescission.

3. SAME—DEPRECIATION IN VALUE INSUFFICIENT CAUSE FOR RESCISSION.
    Where record shows that, until depreciation in value of farm
    land occurred, plaintiffs were satisfied with farm bought on
    contract, they are not entitled to rescind on ground of false
    representations as to value.

4. FRAUD—LACHES—DEFRAUDED PERSON MUST COMPLAIN PROMPTLY.
    If one has been defrauded he must complain of it promptly after
    discovering fraud.

5. VENDOR AND PURCHASER—FRAUD—LACHES—RESCISSION.
    Where purchasers of poultry farm had knowledge of income
    which could be produced therefrom long before they made com-
    plaint of representations relative thereto, and waited nearly
    two years before making complaint, they are not entitled to
    rescind contract for its purchase on ground of false representa-
    tions as to income.

Appeal from Allegan; Miles (Fred T.), J. Sub-
mitted January 7, 1932. (Docket No. 32, Calendar
No. 36,029.) Decided April 4, 1932.

Bill by Stanley Lapicki and another against
George E. Jones and others to rescind a land con-
tract. Cross-bill by defendants Jones for fore-

closure.   Decree for plaintiffs.   Defendants Jones
appeal.   Reversed, and decree entered for defend-
ants Jones on cross-bill.

*Leo W. Hoffman* and *Clare E. Hoffman,* for plain-
tiffs.

*Cornelius Hoffius,* for defendants.

SHARPE, J.   The plaintiffs purchased 40 acres of
land and the personal property thereon in Allegan
county from the defendants Mr. and Mrs. Jones,
under land contract, dated April 3, 1929, at the price
of $6,675, with a down payment of $2,500 and annual
payments of $500 and interest thereafter.   They
entered into possession a few days later.   On
April 3, 1930, they paid the interest due and $450
on the principal.   They also paid the 1929 taxes,
amounting to $56.   It is their claim that in January,
1931, they tendered to Mr. Jones a quitclaim deed of
the premises and a bill of sale of the personalty then
on the place and an offer of possession.   On
March 17, 1931, they filed the bill of complaint here-
in for rescission, alleging that they had been induced
to make the purchase by fraudulent representation.
Mr. and Mrs. Jones answered, denying the allega-
tions of fraud, and by cross-bill sought foreclosure
of their contract.   The E. A. Strout Realty Agency,
Inc., which had advertised the property for sale in
a catalogue issued by it, was also made a defendant,
but there seems to have been a discontinuance as
to it.

After the submission of proofs in open court, a
personal decree was entered against Mr. and Mrs.
Jones on June 15, 1931, in the sum of $2,672.13, with
payment thereof to be made within 60 days from
June 8, 1931, and declared to be a lien on the prop-

erty. It also provided that plaintiffs might remain in possession and have execution for the amount and sell the property thereunder. Mr. and Mrs. Jones appeal. They are hereafter called the defendants.

The allegations of misrepresentation in the bill of complaint may be thus summarized:

1. That the farm and personalty were well worth $6,600.

2. That they would readily sell for that amount.

3. That the farm and the poultry business conducted thereon had produced an income of $5,100 the preceding year, and that a living could be made out of the poultry business alone.

The burden of proof rested upon the plaintiffs to establish by a preponderance of the evidence that these representations were made, that the plaintiffs relied upon them, and that they were untrue. Mr. Lapicki was born in Russia, came to this country in 1907, and had thereafter worked in shops or factories. Mrs. Lapicki had lived on a farm for several years. They were married in 1928. It appears that she took the leading part in the negotiations with the defendants.

*1 and 2.* They both testified that the statements as above were made by Mr. Jones. They also claim that they relied upon the advertisement published in a catalogue, in which the property was described as a "beautiful home and poultry farm, one of the best in Michigan," with a "quick-sale price $6,875."

Mr. Jones admitted that he had listed the property for sale with George F. Carner, a representative in Wayland of the real estate agency, and asked the price therein stated. The plaintiffs, then living in DeKalb, Illinois, read the advertisement in the catalogue, and came to Wayland and interviewed

Carner, whose name was appended thereto. It is admitted that he took them to see this and several other farms which he had for sale, stating the price thereof; that they looked over the land and the buildings on this farm and liked it better than any of the others shown them. After a few days they discussed the purchase thereof with Jones. He agreed to reduce the price from $6,875 to $6,675, for the reason that he had fewer hens on the farm than were stated in the advertisement. They then went to a bank in Wayland, where the contract was prepared and executed. Plaintiffs had to send to Chicago for the down payment, and stayed with defendants at their home until it arrived four days later, when the contract was delivered and defendants moved out and plaintiffs took possession.

Mr. Jones, while denying any personal statement or representation of value, insists that the farm and personalty thereon were at that time worth the price plaintiffs agreed to pay for it. He testified that he purchased the property in 1922 for $2,500; that he made improvements thereon, listing them, in the sum of $2,545, and that, with the personalty and the increase in value after his purchase, the property was worth the sum it was sold for; that he several times told the plaintiffs that that was his price, and that "they could take it or leave it."

Carner, the real estate agent, testified that in his opinion the property was then worth $6,675. Martin Beaver, who had for many years lived on a farm in the vicinity, testified that the land and buildings were worth about $5,000. Charles Ellis, secretary of the Farmers Mutual Fire Insurance Company, testified that in May, 1928, he appraised the value of the buildings on the farm (listing them) for the purpose of insurance at the sum of $4,825.

Several farmers living in the vicinity were called by plaintiffs, and testified that the value of the land and buildings was from $3,000 to $4,500. We quote from the testimony of one of them:

"*Q*. How much do you think this farm is worth, the farm and buildings?

"*A*. Just the farm, I think $3,000.

"*Q*. Was it worth that in April, 1929?

"*A*. Well, according to what I bought, it wasn't hardly worth that, but I thought I would put it on that anyhow, at that price, $75 an acre."

It seems apparent that the value, as fixed by at least some of them, was as of the date of the hearing, in May, 1931. There is evidence that the value of farm land and its equipment had greatly depreciated between the time of the sale to plaintiffs, in April, 1929, and that time. Even if the representation as to value was made as claimed by plaintiffs, we are of the opinion that they have not sustained the burden of proof as to its falsity.

*3.* The advertisement stated, "Income last season $5,100." The defendants testified that they had not seen the advertisement published in the catalogue; that, before the deal was closed by delivery of the contract, Mrs. Lapicki produced it, and that defendants then stated to her that this was an error; that it should have been $4,100. Mrs. Jones testified that she then produced the record of the sales of poultry and eggs during the year 1928, and that Mrs. Lapicki examined it and said, "good enough for me." It disclosed that such sales amounted to $3,568.94.

Mrs. Lapicki testified:

"*Q*. At the present time you are having a hard time on the farm and getting along, to make ends meet, aren't you?

"*A.* Yes.

"*Q.* All the farmers around you are having pretty hard times, aren't they, right now?

"*A.* Yes, I think so.

"*Q.* And isn't that the reason why you complained about Mr. Jones, in order to get some money back on your deal?

"*A.* No, we didn't complain to him.

"*Q.* What is that?

"*A.* No, we didn't complain to him we wanted any money back, that it was hard times.

"*Q.* Isn't that the reason why you brought this suit, because you are hard-up over there and want to get some money out of Mr. Jones, isn't that the reason you started this suit?

"*A.* Yes."

It seems apparent from this record that, until the depreciation occurred, plaintiffs were satisfied with the purchase made by them. Mrs. Jones testified that when plaintiffs came to look at this property she said she didn't care to sell it, and that when the error in the $5,100 was disclosed, Mr. Jones said, "Well, you can back out if you want to," and Mrs. Lapicki said, "We don't want to, we want it." Mrs. Sewers, a daughter of the defendants, testified that she came to the farm to help her parents pack up preparatory to moving; that—

"It was on the back porch, and mamma says she was feeling quite bad because we had to move, and in fact she wanted them to back out, and my dad was there and Mrs. Lapicki was sitting on the back porch, and mamma said 'well, we are going to pack up,' and my dad said 'Mrs. Lapicki,' or 'Nellie,' is what he called her, 'we are going to pack up, now if you want to back out, now is the time before we start packing.' Mamma said 'I wish you would.' Nellie said she didn't want to."

While this is denied by Mrs. Lapicki, we think it worthy of belief.

But to this claim of misrepresentation there is another defense. Plaintiffs entered into possession of this property on or about April 7, 1929. They cultivated the tillable land on the farm, and continued the poultry business thereon, until December, 1930, without complaint to either of the defendants that they had been deceived as to the income which could be produced therefrom. Mr. Jones frequently visited the farm during that time, and made purchases from the plaintiffs. At the end of the first year of their operation, they paid the interest due on the contract and $450 of the $500 payment then due. They paid the taxes assessed thereon for the year 1929. While it might be claimed that they did not during this time discover that they had been deceived by the misrepresentation of value, and if it be conceded that they had little knowledge of farming or raising poultry, yet the conclusion is inevitable that they had knowledge of the income which could be produced from operation of the farm and poultry business long before they made complaint relative thereto.

In *Draft* v. *Hesselsweet,* 194 Mich. 604, 607, it was said:

"This court has said again and again that if one has been defrauded he must complain of it promptly after discovering the fraud."

See, also, *Parkyn* v. *Ford,* 194 Mich. 184; *Roszczewski* v. *Jozwiak,* 225 Mich. 670; *Adams* v. *Grant,* 247 Mich. 60; *Hovey* v. *Plesum,* 250 Mich. 650.

Their neglect to make complaint for so long a time may also be considered in its bearing upon their testimony as to the representations claimed to have

been made. It is apparent that they were satisfied with the purchase made by them until informed by some of their neighbors that they had paid too much for the property. Their purchase at the time it was made was an unfortunate investment for them, as the value of the land and the income therefrom and from the poultry business decreased very markedly soon thereafter. But, in our opinion, the record discloses no reason for granting them the relief sought.

The decree entered will be reversed and set aside, and one may be here entered dismissing the bill of complaint, with costs to defendants. The cause will be remanded to the circuit court to determine the amount due on the contract and for the entry of a decree for its foreclosure as prayed for in the cross-bill of the defendants.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.