C. L. HOLLOWAY et ux.,
Plaintiffs-Appellants,

v.

Eugene HOWERDD et al.,
Defendants-Appellees.

Nos. 74-2125, 74-2126.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 3, 1975.

Decided June 16, 1976.

Rehearing and Rehearing En Banc
Denied July 26, 1976.

---

692

C. Allen High, John B. Wilkes, Nashville, Tenn., Francis I. Breazeale, Duncan, Breazeale & Secor, Chattanooga, Tenn., Oliver P. Dickens, Jr., Atlanta, Ga., for plaintiffs-appellants.

Stewart S. Kresge, Stanly T. Snodgrass, Nashville, Tenn., George M. Derryberry, Chattanooga, Tenn., for defendants-appellees.

Before WEICK, EDWARDS and McCREE, Circuit Judges.

WEICK, Circuit Judge.

This suit was instituted in the United States District Court for the Middle District of Tennessee as a class action, by Tennessee investors in the shares of stock of Modular Properties, Inc. (Modular), a Georgia corporation, against seven defendants, alleging violations of sections 5, 12 and 17 of the Securities Act of 1933 (15 U.S.C. §§ 77e, 77*l*, and 77*q*), Section 10b of the Securities Exchange Act of 1934, and Rule 10b–5 of the Securities and Exchange Commission. Six of the defendants were individuals residing in North Carolina, Georgia and Florida. The seventh defendant was Tennessee Securities, Inc. (TSI), a Tennessee corporation engaged in the brokerage business. Jurisdiction was invoked pursuant to 15 U.S.C. §§ 77v and 78aa.

The case was tried by the District Judge, without a jury. One defendant was nonsuited; no evidence as to liability was offered as to three other defendants; and the case proceeded against only three of the defendants, namely, Eugene Howerdd, Marion S. Lagerquist and TSI. In a Memorandum Opinion reported at 377 F.Supp. 754 the District Judge ruled in favor of the defendants Howerdd and Lagerquist and dismissed the complaint as to them. The District Judge decided against TSI but only in favor of those of the plaintiff's class who knew that the person who sold the shares to them was a registered agent of TSI and were not informed that the agent was operating on his own, separate and apart from his firm.

The Court assessed $10,000 in attorneys' fees for plaintiffs' attorneys, against TSI. The plaintiffs appealed from the judgment of the District Court except as to that part dismissing defendant Lagerquist. TSI has cross-appealed.

We affirm the judgment of the District Court except as to the assessment of attorneys' fees, and as to such assessment the judgment of the District Court is reversed.

## I

## FACTS

The facts of the case are detailed at length in the Memorandum Opinion of the District Judge, and need be repeated here only so far as they pertain to the issues relating to the two remaining defendants. Neither of these two defendants was directly involved in the sale of Modular stock to the plaintiffs.

Howerdd had invested $2,500 in Modular, but he had never received a certificate of stock for his investment. There were discussions of a merger of a company which Howerdd owned, Yetter Homes, Inc., with Modular, but the merger was later abandoned. Howerdd acted as a director of Modular for only a few weeks after the principal officers of the company were killed in an airplane accident. Howerdd never participated in any of the sales of stock to the public, and indeed had no knowledge of the sales.

Liability was imposed upon TSI by the District Court solely because of the activities of its registered agent, Wilburn Tucker, who was acting on his own in violation of TSI rules, and, as it claims, without its knowledge or consent.

On May 28, 1971 the principal officers of Modular, including its president, Crosby, and Attorney Prater, were killed in a crash of a small private airplane in Virginia, and some records of Modular were destroyed in the crash. Secretary and Treasurer Baumstark then became president of Modular, and he committed suicide two weeks later.

Although plaintiffs in their complaint had charged a conspiracy, they did not even sue Tucker, whose activities were the only source of liability imposed upon TSI.

## II

## TSI

Modular was an undercapitalized company. It had two plants, one of which was located in Georgia, but it never operated either plant. It had never registered its shares of stock with the Securities and Exchange Commission as required by law. 15 U.S.C. § 77e.

Wilburn Tucker was first contacted with regard to making a personal investment in Modular, by his friend Raymond Prater, a Chattanooga attorney. After explaining his opportunity to his banker Tucker obtained a $5,000 loan to make his investment. The banker made an investment, and also the banker's brother made an investment, at no solicitation by Tucker. Tucker then received inquiries from various acquaintances and people in the Cookeville, Tennessee area about the possibility of investing in Modular. Word of this investment opportunity spread rapidly throughout Tennessee, with a minimum of assistance from Tucker.

At the time this litigation was instituted more than 140 people had paid to Tucker funds in varying amounts aggregating in excess of $100,000, for investment in the shares of Modular. Because the securities were unregistered, they were to be held for the investors by Tucker under a "piggyback" arrangement, so-called, until a registration statement could be filed with the SEC. The shares of stock were issued in the name of Prater and assigned to Tucker, and held by him for the benefit of the purchasers; the purchasers received letters from Tucker, written on his own stationery, stating that he was holding their shares in their account until they could be released for transfer. Prater had assured Tucker that a registration with SEC would be forthcoming. However, there never was a registration. After Modular became bankrupt the present suit against TSI and others was instituted to recover the amounts invested in Modular by those who purchased shares of stock from Tucker.

At the trial Tucker testified that he had advised all the persons with whom he dealt personally that he was not representing TSI in his sale of Modular shares of stock, that he was not charging a commission, and that he was allowing them to invest in Modular as a personal favor. He deposited the funds received from investors in a separate bank account. He then wrote checks to

Prater, who later mailed to Tucker the assigned stock certificates. Tucker never used TSI stationery to communicate with the investors. However, he also testified that there were some persons who invested in Modular who were not informed that he was not acting for TSI in the sale of the shares of stock.

■ The letters written by Tucker to the investors did not disclose the fact that he was sending their money to Modular through Attorney Prater. They could well have assumed that he was holding their money, as well as the stock, in their account until the transfer could be made. It constituted a fraud on the investors as well as a violation of law by selling unregistered shares of stock. In order not to violate the statute Tucker should have held both the investors' money and the stock in escrow until the transfer could have been made after the shares were registered.

The District Judge limited the scope of his findings as to the liability of defendant TSI. He held that the liability of TSI under § 12(2) was predicated upon the doctrine of respondeat superior; therefore, only those plaintiffs could recover who knew Tucker was a registered security dealer for TSI and who were not informed that he was acting on his own and not in his capacity as a representative of TSI in selling the Modular shares of stock. The Judge concluded that it was inappropriate to premise the liability of TSI on § 15 of the

Securities Act of 1933 which imposes liability on controlling persons.[1] He reasoned that because § 15 provides the brokerage firm with a special defense not available to it at common law, and because Congress did not intend to restrict the common law rights of action available to the investor, the brokerage firm could be held liable under § 12(2) based upon the doctrine of respondeat superior.

The District Judge added that TSI had met the burden of establishing the special defense available to one in control of a person under § 15, i. e., that "it [TSI] had no knowledge of nor reasonable grounds to believe in the existence of Tucker's activity in publicly selling unregistered stock."

It appears to us that there is substantially no difference between the exculpatory provisions contained in Sections 12(2) and 15.

■ In our opinion the plaintiffs are not limited to the remedy provided by either of these sections, but may proceed under the doctrine of respondeat superior.

We indicated as much in a somewhat analogous situation in *Armstrong, Jones & Co. v. SEC*, 421 F.2d 359 (6th Cir.), *cert. denied*, 398 U.S. 958, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970).

In *SEC v. Management Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975), the Court held that § 20(a) of the Securities Exchange Act

---

1. Sections 12(2) and 15 read as follows:
 Section 12(2)
 Any person who—

 . . . . .

 (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not

 know, and in the exercise of reasonable care could not have known, of such untruth or omission,
 shall be liable to the person purchasing such security from him (15 U.S.C. § 77*l*)

 . . . . .

 Section 15
 Every person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under Sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist. (15 U.S.C. § 77*o*)

of 1934,[2] which also imposes liability on controlling persons, was not the sole measure of employer liability; that the controlling provisions of the Act were intended to expand, rather than to restrict, the scope of liability under the securities laws and were not intended to provide an avenue of escape from liability for those who otherwise would be responsible for the acts of their employees.

To the same effect see: *Fey v. Walston & Co.*, 493 F.2d 1036, 1051–52 (7th Cir. 1974); *Lewis v. Walston & Co.*, 487 F.2d 617, 623–24 (5th Cir. 1973); *Johns Hopkins Univ. v. Hutton*, 422 F.2d 1124, 1130 (4th Cir. 1970).

TSI relies on a decision of the Ninth Circuit which is not in accord with this position. *Kamen & Co. v. Aschkar & Co.*, 382 F.2d 689 (9th Cir. 1967), *appeal dismissed per stipulation*, 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85 (1968). *See also Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir. 1975); *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202 (9th Cir. 1970); *Jackson v. Bache & Co.*, 381 F.Supp. 71 (N.D.Calif.1974). The Supreme Court has not resolved the issue.

The Securities Acts were not intended to preempt the operation of the doctrine of respondeat superior in a case involving unlawful activities of a brokerage firm's employees. *See*, Folk, *Civil Liabilities Under the Federal Securities Acts: The Bar-Chris Case, Part II*, 55 Va.L.Rev. 199, 222–23 (1969).

We follow our decision in *Armstrong, Jones, supra*, and hold that in order to determine whether TSI had incurred civil liability as a result of the activities of Tucker, traditional agency principles may be applied.

The use of the doctrine of respondeat superior to impose liability on TSI must be predicated on a finding that Tucker en-gaged in some illegal activity. The District Judge imposed liability on TSI on the basis that its employee, Tucker, was guilty of fraud and misrepresentation in his sale of Modular shares.

TSI contends that it did not know, nor have reason to believe, that its agent Tucker was engaged in illegal activities. Tucker was a registered agent familiar with the applicable rules of conduct pertaining to salesmen and stock brokers. He was required to take a course of study in order to become a registered agent. He was closely supervised by TSI, which had over forty registered agents. The agents were required to fill out, each day, a form disclosing the names of all purchasers of stock and the number of shares purchased. The firm's manager examined these forms each day. The firm did not deal in any of Modular shares; it did know that Tucker was allotted for placement $25,000 of Modular shares, and TSI purchased $5,000 of them, which shares were distributed among the members of the firm. TSI received no commission on any of the sales made by Tucker and neither did Tucker.

TSI relies on the finding made by the District Judge under Section 15 of the Securities Act "that it had no knowledge of nor reasonable grounds to believe in the existence of Tucker's activity in publicly selling unregistered stock." 377 F.Supp. 754, 766. It did of course know that aside from the $5,000 of Modular shares purchased by it and $5,000 by Tucker, Tucker had $15,000 of the shares for placement. It did not have knowledge of the additional sales made by Tucker to the public.

The scope of TSI's liability, however, does not extend to all of the purchasers of the unregistered Modular shares. The District Judge correctly determined that:

2. Sec. 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), provides:

 Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

696

. . . . [T]hose individuals who made purchases of stock from Tucker without any knowledge of his employment or with the clear understanding that he was selling Modular stock completely independent of his employment with Tennessee Securities cannot now bind the firm on the basis of Tucker's apparent or ostensible authority. (*Holloway v. Howerdd*, 377 F.Supp. 754, 766 (M.D.Tenn.1973)). However, those persons who knew of Tucker's status with TSI and who were without knowledge that he was acting separately from TSI were permitted to recover.

For example, the banker who made the loan to Tucker so that Tucker could purchase Modular shares, and persuaded Tucker to allot some shares for himself and also for his brother, C. L. Holloway, and his wife, would not be permitted to recover; and the District Judge denied recovery to the brother and his wife. Nor could knowledgeable investors who were familiar with stock dealings recover because they could have known, from the way Tucker handled their transactions, that they were not dealing with the brokerage firm. This was recognized in *Kamen & Co. v. Aschkar & Co., supra*, 382 F.2d 689, 696.

The general law of agency recognizes that a principal is bound by the acts of an agent done within his apparent or ostensible authority. Restatement (Second) of Agency § 161 (1957) supports that general proposition:

A general agent for a disclosed or partially disclosed principal subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which the agent is authorized to conduct if, although they are forbidden by the principal, the other party reasonably believes that the agent is authorized to do them and has no notice that he is not so authorized.

*See also* Restatement (Second) of Agency § 165 (1957). The liability of TSI is premised on the theory that "if one appoints an agent to conduct a series of transactions over a period of time, it is fair that he should bear losses which are incurred when such an agent, although without authority to do so, does something which is usually done in connection with the transactions he is employed to conduct." See Comment a, Restatement (Second) of Agency § 161 (1957).

There was no proof that TSI "usually" engaged in the sale of unregistered stock.

 TSI, however, had an affirmative obligation to prevent use of the prestige of its firm to defraud the investing public. When its agents are dealing individually in the sale of securities TSI must be clearly disassociated from those transactions, as otherwise it will incur liability on the basis of respondeat superior for the fraudulent representations of its agents.

 In our opinion the District Judge correctly applied the law. He relieved TSI from liability to the knowledgeable plaintiffs and held TSI liable to those plaintiffs who were without knowledge of limitations on the agent's authority.

III

ATTORNEYS' FEES

 TSI challenges the propriety of granting an award of attorneys' fees in the amount of $10,000 to the attorneys for the class plaintiffs in this action. The leading precedent in this area is the recent decision of the Supreme Court in *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The Court reaffirmed the general rule in the United States that attorneys' fees are not ordinarily recoverable by the prevailing litigant in the absence of statutory authorization. In *Alyeska* the Court recognized two exceptions to that general rule. First, the Court noted that it is within the discretion of the trial judge to assess attorneys' fees for willful disobedience of a court order or for the bad faith or vexatious actions of a losing party. *Id.*, 421 U.S. at 258, 95 S.Ct. 1612. In addition, the *Alyeska* majority recognized—

. . . the historic power of equity to permit . . . a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorney's fees, from the fund or property itself or directly from other parties enjoying the benefit. (*Id.*, 421 U.S. at 257, 95 S.Ct. at 1621).

 Liability has been imposed on TSI under the common law doctrine of respondeat superior for the misdeeds of its agent; however, TSI has been absolved of any liability arising under the Securities Act of 1933 itself. Therefore the statutory authorization for an award of attorney's fees [15 U.S.C. § 77k(e)] cannot be applied because the liability of TSI does not originate in the Act but in the common law. As attorney's fees are generally not recoverable and in the absence of any findings that this case relates to the exceptions to the general rule, we reverse the order of the District Judge mandating the payment of attorney's fees.

## IV

### EUGENE HOWERDD

Appellants contend that Eugene Howerdd incurred liability under § 15 of the Securities Act of 1933 as a controlling person of Modular. They submit that the evidence adduced at trial indicates that Howerdd was a director of Modular and as such was presumptively in control.

In the Memorandum Opinion prepared by the District Judge this contention was rejected after an examination of the evidence and an evaluation of the credibility of the witnesses. After making specific findings of fact the District Judge concluded that Howerdd did not act as a controlling person, or as an aider and abettor; Howerdd's involvement with Modular was found to have been in good faith and without an intent to mislead or defraud purchasers of stock. Furthermore, the District Judge found that Howerdd had no control and that he exercised no supervision over the principals of Modular.

 Appellants urge this Court to reject the findings of the District Judge as not supported by substantial evidence and clearly erroneous. In support of that assertion appellants point to the agreement of intent signed on July 16, 1970, which agreement called for Howerdd to become a director, and a letter mailed by Howerdd to twenty-three persons located in four states, which letter stated that he had agreed to become a director. They further argue that Howerdd executed in blank fifty stock powers which were used in the disposition of stock in Modular to North Carolina investors. In addition, corporate minutes dated July 31, 1970 show that Howerdd was elected a director. Various employees of Modular testified at trial that it was their understanding that Howerdd was a director. Finally, appellants assert that the appearance of Howerdd's resume and various prints supplied by Modular Management Company in a brochure issued by it indicate that the findings of the District Judge were clearly erroneous. Modular Management was supposed to be a licensing company, but it was never incorporated.

The District Judge found that the agreement of intent calling for Howerdd to become a director was couched in future terms. The agreement of intent was later canceled. The agreement of cancellation provided for a refund to Howerdd of $2,500, which he had paid on his stock subscription, but this refund was never paid to him. There was no evidence that Howerdd was elected to the board of directors prior to September 14, 1970.

The minutes of the July 31, 1970 directors' meeting, at which Howerdd was alleged to have been elected a director, were not accorded credibility by the District Judge because no such meeting ever took place.

The District Judge found that it was never proven that Howerdd consented to his being included in a brochure or that he knew that the brochure was being used in the sale of stock. The Judge noted that the descriptive data contained in the brochure was inaccurate, and that there was a blank

in the space for his picture. It was found by the Trial Judge that the brochure was only reflective of a scheme of management to utilize Howerdd's good name without his consent.

Relative to the letter sent by Howerdd to twenty-three persons in four states, this was prior to the cancellation of the letter of intent, and was during the time when a merger was contemplated between Yetter Homes, Inc. and Modular. The District Judge found that this letter did not constitute Howerdd as a controlling person or as a seller. He further found that no person who received the letter purchased stock in Modular, and that none of the class plaintiffs ever saw the letter.

The Court further found that Howerdd did become a director from June 4 to June 21, 1971, following the death of the principals of Modular. The purpose was to assist in the sale of the inventory. This was after the sale of stock to the plaintiffs.

Relative to the stock powers, Howerdd signed them on the advice of the company president Baumstark, in April, 1971 that it was necessary in order to "get off the books" the $2,500 of stock subscribed for by Howerdd but which had never been issued, and which stock he understood would be distributed among the directors of Modular and not sold to outsiders. Twelve of these certificates were transferred to purchasers in North Carolina by the use of stock powers signed in blank by Howerdd for Baumstark. These stock certificates, which had never been issued to Howerdd, were signed by Baumstark as an officer of Modular. The Court found no evidence that the purchases were made by reason of the notation of Howerdd's name on the stock certificates, or in reliance of Howerdd's association with Modular; and found that Howerdd had at all times acted in good faith.

In our opinion the findings of fact of the District Judge are supported by substantial evidence and are not clearly erroneous.

The judgment of the District Court is therefore affirmed in all respects except as to the allowance of $10,000 attorneys' fees to counsel for plaintiffs, and as to such allowance of attorneys' fees the judgment is reversed.

EDWARDS, Circuit Judge (concurring specially).

I agree with the result arrived at by the opinion of the court and with its reasoning in all but one respect.

Section 15 creates only joint and several liability on the part of the controlling agency "to the same extent" as that found to exist in relation to the "controlled person." And as the majority opinion points out, plaintiffs herein did not bring suit against TSI's employee, Tucker, and Tucker's liability and the extent thereof have not been determined.

Absent this consideration, I believe that the facts in this case would serve to impose liability on defendant, Tennessee Securities, Inc., under Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o (1970). In my view the facts known to TSI and its officers afforded them "reasonable ground to believe in the existence of the facts by reason of which the liability of [TSI's] controlled person [Tucker] is alleged to exist" in this cause of action. This view, if given effect, would require our holding that the contrary finding by the District Judge was "clearly erroneous" and would widen the class of plaintiffs the District Judge certified.

This conclusion, however, has no significance as to the result in this case, since plaintiffs did not see fit to join Tucker.