Keith A. SCRIPPS and Diane A. Scripps, Plaintiffs,

v.

SMITH, HAGUE & CO., INC., a Michigan corporation; Henry Ansbacher, Inc., a Delaware corporation; Henry Ansbacher Holdings, Inc., a Delaware corporation; Harold R. Boyer, Jr.; and John Doe, unknown principal of Henry Ansbacher, Inc. and/or Henry Ansbacher Holdings, Inc., and/or Smith, Hague & Co., and Harold Boyer, Jr., Defendants.

Civ. A. No. 87–70204.

United States District Court, E.D. Michigan, S.D.

Jan. 26, 1988.

Reuben M. Waterman, Jr., Thomas H. Keating, Waterman, Bramlage & Keating, Detroit, Mich., for plaintiffs.

Laurence M. Scoville, Jr., David E. Nims, Jonathan T. Walton, Jr., Clark, Klein & Beaumont, Dennis Egan, Butzel, Keidan, Simon, Myers & Graham, Detroit, Mich., Mindy J. Spector, Robert F. Brodegaard, Weil, Gotshall & Manges, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Plaintiffs, former shareholders of the Evening News Association (ENA), allege that the sale of their stock to defendants was accomplished by fraud and misrepresentation in violation of the securities laws, the Racketeer Influenced and Corrupt Organizations Act (RICO) and state law. Because they allege they were induced to sell their ENA stock at a much lower price than was later paid during a tender offer, plaintiffs sue for damages. Defendants Henry Ansbacher, Inc. and Henry Ansbacher Holdings, Inc. move for summary judgment on grounds that plaintiffs have failed to state a supportable claim.

The role of Henry Ansbacher, Inc. and Henry Ansbacher Holdings, Inc. (collectively "Ansbacher") is, at most, that of a principal who had as agents, Smith, Hague & Co. and Harold Boyer, Jr. An employee of Ansbacher is alleged to have telephoned Boyer, a broker-employee of Smith, Hague & Co., with an offer to buy ENA shares. (Complaint, ¶ 15). Ansbacher did not place any limit on the number of shares or the price to be paid. (Complaint, ¶ 16). The complaint asserts that Boyer made ENA stock purchases from plaintiffs, among others, to fill the Ansbacher request. Boyer structured the transactions himself. In fact, the deposition of Boyer, taken December 20, 1984, indicates that he handled all of the stock purchases without revealing the identity of the ultimate purchaser, Ans-

bacher, to plaintiffs. (The depositions of Keith and Diane Scripps reiterate these facts.) Nothing in the record suggests that Ansbacher was more than merely a customer of the Smith, Hague & Co. brokerage firm.

I find no basis for liability, vicarious or otherwise, on the part of Ansbacher in the alleged agency existing between defendants.

■ Plaintiffs base their claims against Ansbacher on a *respondeat superior* theory within the law of agency. They assert that Ansbacher, as principal, must answer for the actions of its agents in purchasing the ENA stock. *See Restatement, Second, Agency* Section 212, *et seq.* This general rule is subject to qualifications, however, when an agent's statements or actions are removed from the control of his principal. *Id.* For example, a mere customer may not be held vicariously liable for the actions of his broker unless certain attributes of an agency relationship may be found from the facts.[1]

■ If Ansbacher is liable for the actions of Smith, Hague & Co. and Harold Boyer, liability must rest on the actual or apparent authority of those agents to act for Ansbacher. The facts of this case, considered in a light most favorable to plaintiffs, do not support vicarious liability based on any knowledge or duty on the part of Ansbacher. Any customer seeking to obtain stock has a right to expect his broker to perform professionally and ethically in purchasing shares on the customer's behalf. Likewise, the customer may rely upon the brokerage firm to regulate the activities of its employees. Any duty in this respect lies with the brokerage house as an employer responsible for the acts of its employees. As a purchaser,

Ansbacher may not be presumed to have known misrepresentations would be made in order for the broker to obtain ENA stock. Ansbacher had no duty to closely police the manner in which stock was obtained. The complaint does not allege, and facts do not support vicarious liability.

■ Thus, the only issue before me is whether or not the actual or apparent authority Ansbacher granted Smith, Hague & Co. and its employee Harold Boyer is sufficient to support liability under a doctrine of *respondeat superior.* The facts of this case clearly show that Ansbacher did not grant Boyer actual authority to obtain stocks by misrepresentation or by other activity in violation of the law. Neither does the complaint allege that Ansbacher may be held liable for granting actual authority to its broker. Therefore, Ansbacher may be held vicariously liable for Boyer's activities only if Boyer had the *apparent* authority to make the statements, or engage in the conduct on behalf of Ansbacher, and plaintiffs relied upon the statements or conduct of Boyer. *Restatement, Second, Agency* Section 266.

The United States Supreme Court has held that vicarious liability due to apparent authority must be premised upon the fact that a third party has relied upon the belief that an agent is acting in the interests of a principal. *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982).

In *Holloway v. Howerdd,* 536 F.2d 690 (6th Cir.1976) (*cited in American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp., supra* ), a suit was brought by investors who had purchased stock shares of Modular from Tucker. Tucker was an

---

1. *See, for example,* (1) *Restatement, Second, Agency* Sections 257 (actual or apparent authority) and 258 (third person's reasonable expectations of the agent's authority); (2) real estate brokerage cases presuming a level of knowledge on the part of all parties: *Head v. Benjamin Rich Realty Company,* 55 Mich.App. 348, 222 N.W.2d 237 (1974); *Sullivan v. Ulrich,* 326 Mich. 218, 40 N.W.2d 126 (1949); *Groening v. Opsata,* 323 Mich. 73, 34 N.W.2d 560 (1948); *Chanler v. Venetian Properties Corporation,* 254 Mich. 838,

236 N.W. 838 (1931); and *Chaffee v. Raymond,* 241 Mich. 392, 217 N.W. 22 (1928); and (3) stock brokerage cases imposing a duty to supervise employees due to an underlying public trust of a brokerage firm: *Sharp v. Coopers & Lybrand,* 649 F.2d 175 (3d Cir.1981); *Holloway v. Howerdd,* 536 F.2d 690 (6th Cir.1976); *Armstrong, Jones & Co. v. Securities and Exchange Commission,* 421 F.2d 359 (6th Cir.1970), and *Spiekermann v. Whittaker Corp.,* 598 F.Supp. 1 (E.D.N.Y.1978), as cited by the parties.

agent of TSI, a brokerage firm. When Modular went bankrupt, the investors sued TSI, among others, on the grounds that its agent, Tucker, had engaged in the illegal sale of stock. The United States Court of Appeals for the Sixth Circuit held that liability on the part of TSI did not extend to all purchasers of the Modular stock shares. Rather, only those "persons who knew of Tucker's status with TSI and who were without knowledge that he was acting separately from TSI were permitted to recover." *Holloway, supra* at 696. Purchasers who did not know that Tucker was affiliated with TSI were not permitted to recover from TSI under a *respondeat superior* theory. *Id.*

The complaint does not assert, and the facts do not show, that Ansbacher had anything more than a customer-broker relationship with Smith, Hague & Co. and Boyer. Status as a customer, without more, cannot be a basis for apparently authorized actions by a broker. As a matter of law, Ansbacher could be liable to plaintiffs only if plaintiffs were aware that Boyer was acting for Ansbacher in making the statements or conduct complained of in this case. Neither Diane Scripps nor Keith Scripps knew of Ansbacher's relationship with Smith, Hague & Co. and Boyer during the stock purchase transactions. Diane Scripps has stated that she first learned of Ansbacher's involvement after the complaint in this case was filed. (Deposition of Diane Scripps taken July 14, 1987, pages 110–111). Boyer did not inform Diane Scripps that Ansbacher was a principal for whom he was acting in purchasing stock. *Id.* Keith Scripps has stated that he first learned of Ansbacher's involvement in the stock purchase transactions from the complaint filed in this case. (Deposition of Keith Scripps taken July 16, 1987, page 198). Counsel for Diane and Keith Scripps reaffirmed their lack of awareness of any affiliation of Ansbacher with Boyer or with Smith, Hague & Co. at the December 21, 1987 hearing in response to my inquiry.

In light of the facts presented by plaintiffs, I find that neither plaintiff relied upon nor believed that Boyer was acting in the interests of Ansbacher during the purchase of plaintiffs' ENA stock. Plaintiffs do not allege that Boyer or Smith, Hague & Co. violated the law while proceeding within the apparent authority of an agency relationship with Ansbacher. Because the stock purchases were not effected by Boyer with apparent authority from Ansbacher, plaintiffs cannot hold Ansbacher vicariously liable under a theory of *respondeat superior* for any wrongdoing on the part of Boyer or Smith, Hague & Co. in accomplishing the transactions.

I need not reach the issues of liability predicated upon any alleged violation of the securities laws, RICO, or state law as I find no basis for liability on the part of Ansbacher to plaintiffs.